**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sentinel Insurance Company, Limited,<br><br>  Plaintiff,<br><br>v.<br><br>Shaarei Tzion; Ahavat Israel Israel-Bucharian Jewish Community; Baruch Cohen; Elinor Cohen; and Alexander Priyev,<br><br>  Defendants.<br>_____<br>Shaarei Tzion-Ohel Bracha Affiliated With Bet Gavriel of Phoenix, an Arizona non-profit corporation,<br><br>  Cross-Claimant,<br>v.<br><br>Ahavat Israel Israel-Bucharian Jewish Community, an Arizona non-profit corporation; Baruch Cohen and Elinor Cohen, husband and wife; Alexander Priyev and Sarah Priyev, husband and wife,<br><br>  Cross-Defendants.<br>_____<br>Ahavat Israel Israel-Bucharian Jewish Community, an Arizona non-profit corporation,<br><br>  Counterclaimant,<br><br>v.<br><br>Shaarei Tzion-Ohel Bracha Affiliated With | No. CV-15-00208-PHX-NVW<br><br>**ORDER** |

Bet Gavriel of Phoenix, an Arizona non-profit corporation,

    Counterdefendant.

Before the Court are two separate motions and their accompanying briefing. First is the Motion for Summary Judgment by defendant/cross-claimant Shaarei Tzion-Ohel Bracha ("Shaarei Tzion") against defendants/cross-defendants Ahavat Israel-Bucharian Jewish Community, Baruch and Elinor Cohen, and Alexander and Sarah Priyev (collectively "Ahavat Israel") (Doc. 51). Second is Shaarei Tzion's motion to dismiss Count IV of Ahavat Israel's "counterclaim" (actually a cross-claim) against Shaarei Tzion. (Doc. 55). Supplemental briefing at the Court's request was completed on February 24, 2017. (Docs. 90, 91, 92.)

**I.    NATURE OF THE PROCEEDING AND SUMMARY OF RULINGS**

This dispute arises out of the departure of members of a Bucharian Jewish congregation to form their own worship group. The original group, Shaarei Tzion, incorporated as an Arizona non-profit corporation in 2004, and the departing group, Ahavat Israel, incorporated in 2014 when the departure happened. Without knowledge or approval of Shaarei Tzion, Ahavat Israel and its principals entered Shaarei Tzion's place of worship and "loaded into a truck all physical contents (all personal property) and moved it to another location . . . ." (Doc. 1 at 3.) "This property included several Torahs, prayer books, books, other religious artifacts, tables, chairs, and bookcases, which Shaarei Tzion has valued at $176,040." *Id.*

The next day Shaarei Tzion made a property theft claim under its Spectrum Business Owner's Insurance Policy with Sentinel. Sentinel's investigation showed that though the Ahavat Israel defendants, including Cohen and Priyev, do not claim ownership of the property taken, they do deny Shaarei Tzion's ownership. They did take the personal property without Shaarei Tzion's consent, but they claim some kind of right

to do that through the greater "Bucharian Jewish Community." The parties have not provided the Court with a copy of the policy at issue, but it appears that to make out an insurance claim, Shaarei Tzion must prove ownership and theft.

Faced with these conflicting claims, Sentinel brought this declaratory judgment action against both non-profit corporations and individuals to determine ownership of the property, its obligations under the policy, and its subrogation rights against the Ahavat Israel defendants if it pays the claim. (Doc. 1 at 5-6.) The Court and the parties agreed to proceed first with discovery and motions on the ownership issue. (Doc. 58.) The motions before the Court address that and a few other claims.

In summary, the Court rules as follows at this time:

1. Ahavat Israel has no ownership interest in any of the property. Ahavat Israel admits this.
2. Ahavat Israel's attempt to defeat Shaarei Tzion's ownership and conversion claims based on some kind of rights in the "Bucharian Jewish Community" is beyond civil courts' authority to recognize. Those contentions, too, do not undermine Shaarei Tzion's assertion of ownership.
3. There is a disputed question of fact whether certain books and other items are the personal property of Cohen or the property of Shaarei Tzion that Cohen was allowed to use.
4. There are disputed questions of fact as to exactly how much and which properties were taken and their value.
5. To the extent Sentinel pays the claim, it will be subrogated to Shaarei Tzion's claims against Ahavat Israel, Cohen, and Priyev.
6. As between Sentinel and its insured Shaarei Tzion, the controversy pled for declaratory judgment, very generously read, has largely been resolved except for Cohen's claim to own some books and other items, which may not be significant. The parties will be directed to address whether that is a sufficient declaration of

rights to enable Sentinel to continue processing the claim and the rest of this declaratory action should be dismissed.

## II.     FACTUAL BACKGROUND

Located in Phoenix, Shaarei Tzion is a Bucharian Jewish congregation and an Arizona non-profit corporation formed in 2004. (Doc. 51 at 6.) The group's membership overlaps to some extent with that of non-party Phoenix Buchori Jewish Community ("Phoenix Buchori"), also an Arizona nonprofit corporation, which was legally organized in 1998. (Doc. 67 at 8-9.) In other words, Shaarei Tzion is composed of Bucharian Jews but is a separate corporate entity from Phoenix Buchori.[1]

Rabbi Baruch Cohen served as Shaarei Tzion's paid rabbi, manager, and spiritual leader until the spring of 2014 when a dispute soured their relationship. (Doc 51 at 6.) In April of that year, Cohen and several followers broke off from Shaarei Tzion and formed Ahavat Israel as a separate worship group. (Doc. 67 at 10; Doc. 51 at 6.) Included among them was Alexander Priyev, who had served on Ahavat Israel's board of directors since its inception. (Doc. 52-1 at 11.) Ahavat Israel incorporated in 2014 under Cohen's leadership. (Doc. 52-6 at 2.) Shaarei Tzion officially terminated Cohen on May 1, 2014. (Doc. 67 at 10; Doc. 51 at 6.) Cohen has presided as Ahavat Israel's rabbi ever since.

For some time and throughout all of this, Shaarei Tzion has operated a house of worship at 6516 North 7th Street in Phoenix ("7th Street Synagogue"). (Doc. 51 at 6; Doc. 67 at 7.) The parties at oral argument struggled to articulate who exactly owns the 7th Street Synagogue, though both parties agree it is not Shaarei Tzion.[2] Throughout the

---

[1] "Buchori" and "Buchari" are alternative spellings for the same designation. *See* Doc. 67 at 7.

[2] At one point counsel for Ahavat Israel identified the owner as one "Mr. Elishayev," a controller of what was characterized as Shaarei Tzion's home office in New York. The record shows that Shaarei Tzion's official Arizona incorporation records list one Simon Alishaev, based in Forest Hills, New York, as Shaarei Tzion's director. (Doc. 52-5 at 3.) However, counsel for Shaarei Tzion pointed out that in Ahavat Israel's First Amended Counterclaim (Doc. 36), Ahavat Israel stated that the 7th Street Synagogue is legally titled to Bet Gavriel Bucharian Congregation. (*See* Doc. 36, ¶ 13.) In its response and cross-motion for summary judgment, Ahavat Israel states that "Beth Gavriel Bukharian Congregation . . . does not appear to be a legal entity formed in either Arizona or New York, but rather a community of worshippers." (Doc. 65 at 7.) It is impossible to

- 4 -

record, Ahavat Israel generally characterizes Shaarei Tzion as a mere "property manager" (or, in at least one instance, a "quasi-property manager") of the 7th Street Synagogue. (Doc. 91 at 5; Doc. 66 at 8.) However, it is undisputed that Shaarei Tzion operated and occupied the 7th Street Synagogue with permission from the owner at all times relevant to this case.

At issue here are various items of personal property that were kept within that building over time. The parties dispute who owns these items. According to Ahavat Israel, "Shaarei Tzion has asserted and exercised dominion over approximately half of said property, which property continues to be located in the [7th Street Synagogue]." (Doc. 67, ¶ 9.) Ahavat Israel appears to be saying that Shaarei Tzion did exercise dominion and control over the personal property on the premises that was not taken and is still there, which they say is about half of what was there. This verbal sleight of hand does not deny that the property taken—the other half—was also under Shaarei Tzion's dominion and control. (The record contains no admissible evidence disputing that all the taken property was under Shaarei Tzion's dominion and control at the premises.)

Ahavat Israel is vague about who owns the property taken but, in its most focused contention, asserts that it is owned by "the community of worshipers called the Bucharian Jewish Community (or the individual members thereof personally)." (Doc. 67, ¶ 9.) However, contrary to Ahavat Israel's own cross-claim (Doc. 36 at 7), Priyev himself conceded in a deposition that regardless of who does own it, Ahavat Israel does not. (Doc. 52-1 at 21.)

On August 27, 2014, agents of Ahavat Israel, without permission from or notice to Shaarei Tzion, brought a truck to the 7th Street Synagogue and removed numerous items

---

say on this record who the owner of the 7th Street Synagogue is.

In the end none of that matters for the issues to decide on these motions. Regardless of who owns the building or of the formalities of a leasing arrangement, Shaarei Tzion has had possession of the premises. That fact is undisputed within the bounds of civil law and is all that is needed for the rulings made in this order.

- 5 -

from the building. (Doc. 51 at 7; Doc. 67 at 10.) Ahavat Israel asserts that everything removed from the building belongs to "the community of worshipers called the Bucharian Jewish Community (or the individual members thereof personally), which has existed in one corporate form or another since 1998 . . . , and not to any corporation and certainly not to Shaarei Tzion." (Doc. 67 at 6.) Shaarei Tzion disputes this, claiming to be the sole lawful owner of all the property removed. (Doc. 51 at 9.) Accordingly, Shaarei Tzion filed a claim for theft with Sentinel, its insurer and the plaintiff in this case, alleging that Ahavat Israel stole $176,040 worth of items from the 7th Street Synagogue. (Doc. 52-4.) These items consisted of "several Torahs, prayer books, books, other religious artifacts, tables, chairs, and bookcases." (Doc. 1, ¶¶ 13-14.) Ahavat Israel disputes both Shaarei Tzion's purported ownership of the items and the $176,040 value estimation. (Doc. 15 at 2.) There is no dispute, however, that agents of Ahavat Israel removed the items from the 7th Street Synagogue on August 27, 2014, and that Shaarei Tzion was the sole legal entity occupying and operating out of that building at the time. (Doc. 52, ¶¶ 15, 20; Doc. 67 at 10; Doc. 52-5 at 2.)

Sentinel filed this diversity action on February 6, 2015, against both Shaarei Tzion and Ahavat Israel, the Cohens, and the Priyevs seeking a declaratory judgment as to the true owner of the disputed property. Shaarei Tzion filed a cross-claim against Ahavat Israel, the Cohens, and the Priyevs alleging common law conversion and unjust enrichment. (Doc. 13.) Ahavat Israel then filed a "counterclaim" (actually a cross-claim) against Shaarei Tzion, alleging breach of settlement agreement, demand for accounting, and conversion, as well as unjust enrichment on a real estate matter beyond the insurance dispute at issue here. (Doc. 36.) Shaarei Tzion now seeks summary judgment against Ahavat Israel on its own claims of conversion and unjust enrichment concerning the personal property, which subsumes the ownership issue. Shaarei Tzion also seeks summary judgment on Ahavat Israel's claim of conversion (Doc. 51 at 13) and dismissal of Ahavat Israel's claim of unjust enrichment. (Doc. 55.)

## II. GENERAL LEGAL STANDARDS

### A. Summary Judgment

Summary judgment should be granted if the evidence reveals no genuine dispute about any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that might affect the outcome of the suit under the governing law, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

It is the moving party's burden to show there are no genuine disputes of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Upon such a showing, however, the burden shifts to the non-moving party, who must then "set forth specific facts showing that there is a genuine issue for trial" without simply resting on the pleadings. *Anderson*, 477 U.S. at 256. To carry this burden, the nonmoving party must do more than simply show there is "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Id.* at 587.

Additionally, summary judgment is not limited to the issues raised by the parties. A court may grant summary judgment on other grounds "[a]fter giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f)(2). *See Norse v. City of Santa Cruz*, 629 F.3d 966, 971 n.2 (9th Cir. 2010) (noting that the power of district courts "to enter summary judgment sua sponte, even on the eve of trial," derives from Rule 56).

## III. ANALYSIS

### A. Authority to Adjudicate Disputes Between Religious Non-Profits

As a preliminary matter, the First Amendment prohibits this Court from wading into questions of religious practice, including a religious community's standards for recognizing one or another kind of entity. *See Serbian Eastern Orthodox Diocese for the United States of America & Canada v. Milivojevich*, 426 U.S. 696, 709-10 (1976) ("First

Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice."). However, courts may "adopt neutral principles of law as a means of adjudicating a church property dispute" without running afoul of the First Amendment's religion clauses. *Jones v. Wolf*, 443 U.S. 595, 604 (1979). *See also Ad Hoc Committee of Parishioners of Our Lady of Sun Catholic Church, Inc. v. Reiss*, 223 Ariz. 505, 512, 224 P.3d 1002, 1009 (Ariz. Ct. App. 2010) ("[D]epending upon the circumstances, civil courts can resolve at least some church-related disputes through neutral principles of law so long as the case is resolved without inquiry into church doctrine or belief."). "Because religious organizations are part of the civil community, they are subject to societal rules governing property rights, torts, and criminal conduct." *Rashedi v. General Bd. of Church of Nazarene*, 203 Ariz. 320, 353, 54 P.3d 349, 353 (Ariz. Ct. App. 2002).

As discussed below, the central dispute here is over who among various individuals and entities is entitled to specific items of property. While the entities in question have religious affiliations, that does not prevent this Court from adjudicating their dispute. The claims here can be resolved based on neutral principles of general application concerning non-profit corporations. The arguments raised in Shaarei Tzion's motions will be considered accordingly. However, in deciding this dispute, certain kinds of contentions may be beyond the Court's consideration because they are grounded in religious belief or practice. The case may be decided only on neutral principles of civil law; the rest is *extra legem.*

### B. Conversion

Both Shaarei Tzion and Ahavat Israel allege the tort of conversion. Conversion is "any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Shartzer v. Ulmer*, 85 Ariz. 179, 184, 333 P.2d 1084, 1088 (1959). But a party need not own the property in question to make out a claim of conversion; it is enough that a party "have had the right to immediate possession of the personal property at the time of the alleged conversion." *4801 East Washington*

*Street Holdings, LLC, acting ex rel. CW Capital Asset Management LLC v. Breakwater Equity Partners, LLC*, No. CV-13-01475-PHX-DGC, 2015 WL 1859057, at *5 (D. Ariz. April 23, 2015) (citing *Case Corp. v. Gehrke*, 208 Ariz. 140, 91 P.3d 362, 365 (Ariz. Ct. App. 2004)). *See also Autoville, Inc. v. Friedman*, 20 Ariz. App. 89, 91, 510 P.2d 400, 402 (Ariz. Ct. App. 1973) ("The gravamen of [conversion] is therefore the wrongful interference with another's ownership or right of possession."); *Southern Ariz. Bank & Trust Co. v. Stigers*, 47 Ariz. 31, 37, 53 P.2d 422, 424 (1936) ("The legal title is not always necessary to an action for conversion, but any special valuable interest in the property accompanied with the right of possession is sufficient to form the basis of such an action.").

### 1. Shaarei Tzion's Claim of Conversion

At oral argument, the Court ordered the parties to provide supplemental briefing on whether, regardless of ownership, a finding that Ahavat Israel interfered with Shaarei Tzion's right of possession would suffice to require possession of the property to be restored. (Doc. 88. *See* Docs. 90, 91, 92.) The parties have thus had notice and the opportunity to respond. *See* Fed. R. Civ. P. 56(f)(2).

Ahavat Israel committed the tort of conversion against Shaarei Tzion by depriving them of their possessory rights to the items in question. It is undisputed that regardless of who owned them, Shaarei Tzion had come to possess the items by lawful means and was retaining them within the 7th Street Synagogue on August 27, 2014. It is likewise undisputed that on that day, agents of Ahavat Israel physically removed the items from the building without Shaarei Tzion's permission. Ahavat Israel's vague contention that Shaarei Tzion "asserted and exercised dominion" only over those items not removed is an attempted legal characterization and deflection of the undisputed fact of Shaarei Tzion's actual control and possession of everything on the premises and everything Ahavat Israel removed.

Trying to have it both ways, Ahavat Israel leans on the contradictory assertion that the property taken belonged not to Shaarei Tzion but "to the community of worshipers

called the Bucharian Jewish Community (or the individual members thereof personally), which has existed in one corporate form or another since 1998," but somehow "not to any corporation." (Doc. 67 at 6.) The record, however, shows only three relevant corporations: Phoenix Buchori (Doc. 67-3), Shaarei Tzion (Doc. 52-5), and Ahavat Israel (Doc. 52-6). To get where it wants to go, Ahavat Israel has to postulate a fourth, non-jural collection, the "Bucharian Jewish Community," and goes so far as to include in the record numerous affidavits of "member[s] of the Bucharian Jewish Community," attesting that they donated money either to the "Bucharian Jewish Community" or to "Ahavat Israel"—though Ahavat Israel did not yet exist when the donations were made. (Doc. 67-1 at 7-45.) (In form these individuals donated to and got receipts from Shaarei Tzion. *See* Doc. 52-3 at 9.)

What the "Bucharian Jewish Community" is remains unclear. Nonetheless Ahavat Israel asserts a floating donative intent to it through its outward appearance in Shaarei Tzion, but, they seemingly contend, now Ahavat Israel is the better manifestation of that community and gets the proceeds of past donation. To the extent this theory depends on some recognition of worship communities found in religious doctrine, these contentions are non-cognizable in civil courts. *See Milivojevich*, 426 U.S. at 709-10. But even if the "Bucharian Jewish Community" is meant to identify something secular, property rights under the law, including the right to possess, only adhere to legal entities. Ahavat Israel has not explained what kind of entity this abstract community is, let alone asserted that it could have property rights.[3] Moreover, while Ahavat Israel is a corporation, it has only existed as such since 2014. Nowhere is it explained how prior to 2014, donors could have intended their gifts to go to a corporation not yet in existence.

---

[3] The law does sometimes recognize "unincorporated associations," or groups of people with shared interests, for certain purposes. But under Arizona law, "such an association…in the absence of statutes recognizing it, has no legal entity distinct from that of its members." *Assoc. Students of Univ. of Arizona v. Arizona Bd. of Regents*, 120 Ariz. 100, 102, 584 P.2d 564, 566 (Ariz. Ct. App. 1978). Such an entity presumably cannot have property rights separate from those of its individual members. Either way, Ahavat Israel has nowhere asserted that the "Bucharian Jewish Community" is an unincorporated association.

Ahavat Israel does alternatively contend that the property belonged to "the individual members" of the community. (Doc. 67 at 6.) If the argument is that those individuals can retract donations made to Shaarei Tzion merely by virtue of leaving it, Ahavat Israel is mistaken. *See Arizona Rangers, Inc. v. Bisbee Co.*, 11 Ariz. App. 252, 253, 463 P.2d 836, 837 (Ariz. Ct. App. 1970) ("The general rule is that when a member of a non-profit corporation voluntarily withdraws from it, he forfeits all interest in the property of the corporation.") But even if Ahavat Israel believes these items still belong to those individuals, again the right to possession alone can provide grounds for a conversion action, and there is no dispute the items in question were kept in the 7th Street Synagogue on and prior to August 27, 2014, with Shaarei Tzion as the building's only tenant.

Presumably Ahavat Israel's characterization of Shaarei Tzion as a mere "property manager" is meant to evoke a landlord-tenant relationship, suggesting that just as a landlord is not in possession of tenants' belongings, neither was Shaarei Tzion in possession of its worshippers' belongings. (Ahavat Israel goes all the way on one occasion and refers to Shaarei Tzion a "landlord" outright. *See* Doc. 91 at 4.) At one point in its briefing, Ahavat Israel takes this even farther and contends that "Shaarei Tzion abandoned the community in 2007 and did not even operate as the community's property manager . . . ." (Doc. 91 at 6.) But Ahavat Israel also acknowledges that while the items were kept at the 7th Street Synagogue, "Shaarei Tzion was permitted to use them." (Doc. 91 at 4.) Throughout its briefing, then, Ahavat Israel asserts in turn that Shaarei Tzion was totally absent, a mere "property manager," and a user of the items in question. Even if there is a religious explanation for this, there is no explanation based on evidence and facts that this Court can recognize.

The fact is that these items were on Shaarei Tzion's premises on August 27, 2014, and, by Ahavat Israel's own admission, used by Shaarei Tzion. Relabeling Shaarei Tzion as a "property manager" or "landlord" cannot change the significance of facts in the world and law on the books. Shaarei Tzion had "the right to immediate possession of the

personal property at the time of the alleged conversion." *Breakwater*, 2015 WL 1859057, at *5. Ahavat Israel and its members who acted are liable for conversion of those items they carried away from the 7th Street Synagogue.

However, Sentinel will be subrogated to Shaarei Tzion's conversion claim if and when it pays the insurance claim.

### 2. Ahavat Israel's Claim of Conversion

In light of all of this, Ahavat Israel's conversion claim must necessarily fail. Despite contesting Shaarei Tzion's ownership of the items in question, Ahavat Israel has presented no evidence that it owned or was entitled to possess them. No conversion claim is plausible without asserting at least one of these. *See Autoville, Inc.*, 20 Ariz. App. at 91, 510 P.2d at 402. Shaarei Tzion is entitled to summary judgment on this claim.

### C. Unjust Enrichment

Unjust enrichment "occurs when one party has and retains money or benefits that in justice and equity belong to another." *Trustmark Ins. Co. v. Bank One, Arizona, NA*, 202 Ariz. 535, 541, 48 P.3d 485, 491 (2002). There are five elements to a claim of unjust enrichment: "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy." *Id.*

### 1. Summary Judgment: Shaarei Tzion's Claim of Unjust Enrichment

Shaarei Tzion cannot sustain a claim of unjust enrichment because an adequate remedy exists at law, namely a conversion claim. Shaarei Tzion has not alleged that Ahavat Israel incurred any additional specific benefits from possessing the converted property beyond possession, use, and enjoyment of the property itself. *See* Doc. 13, ¶¶ 31-33. Without asserting additional enrichment on Ahavat Israel's part, Shaarei Tzion will get full relief from an adequate conversion remedy. Unjust enrichment is not a doppelganger of every other tort. On the facts here, it is merely duplicative of the conversion claim. Summary judgment for Shaarei Tzion should be denied on this

question.

Again, if there were any unjust enrichment claim, Sentinel would be subrogated to it if and when they pay Shaarei Tzion's insurance claim. Sentinel would be the successor in interest but would succeed to nothing.

### 2. Motion to Dismiss: Ahavat Israel's Claim of Unjust Enrichment

Under the Federal Rules of Civil Procedure, a party may move to dismiss an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To avoid dismissal, a complaint need contain only "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Shaarei Tzion has separately moved to dismiss Ahavat Israel's claim of unjust enrichment asserted in Ahavat Israel's cross-claim. *See* Doc. 36 at 7-8. Ahavat Israel contends it "expended more than $175,000 for building improvements to the 7th Street [Synagogue] in reliance on verbal promises from [Shaarei Tzion] that it would pledge or otherwise convey to [Ahavat Israel] title to the 7th Street [Synagogue]." (Doc. 36 at 7-8.) Whether or not that is true, the parties do not dispute that Shaarei Tzion, whatever its interest, does not own the 7th Street Synagogue. Shaarei Tzion could not have been enriched by Ahavat Israel's expenditure on a building Shaarei Tzion did not own. Such a claim could only lie against the building's owner. Ahavat Israel has therefore failed to state a claim of unjust enrichment against Shaarei Tzion. Shaarei Tzion's motion to dismiss will be granted.

### D. Rule 56(d)

In its response, Ahavat Israel asks the Court to deny summary judgment under Federal Rule of Civil Procedure 56(d), which permits a court to deny summary judgment if the nonmoving party has not had adequate opportunity for discovery. (Doc. 66 at 9-11.) However, the issues on which it asks for further discovery are not material to the

issues presented on summary judgment.

Moreover, Ahavat Israel made this request in August of 2016, five months before oral argument was held and months after the close of discovery. Ahavat Israel has had ample time to acquire discovery. Ahavat Israel also failed to comply with the procedure in the Scheduling Order (Doc. 35 at 3) for prompt informal submission of discovery disputes. The Court requires that precisely to resolve discovery disputes and to prevent them from delaying the case. Ahavat Israel's own neglect forfeits any delay for more discovery. Accordingly, its prayer for relief under Rule 56(d) is denied.

## IV.     Relief

At its election, Shaarei Tzion (or its subrogee Sentinel) is entitled either to replevin or damages. It is undisputed that, except where indicated as belonging to Rabbi Cohen, Ahavat Israel took the items listed on Exhibit 7 of Shaarei Tzion's statement of facts. (Doc. 52-7.) However, it would be necessary to have a trial on whether other items not on that list were also taken by Ahavat Israel. Trial would be necessary on all valuation unless otherwise agreed.

## V.     Further Proceedings

The parties will be directed to confer and submit joint or separate proposals for scheduling all matters that remain in this case. The reports shall address the following as well:

1. Whether Count I (Breach of Settlement Agreement) and II (Demand for Accounting) of Ahavat Israel's cross-claim ("counterclaims") should be dismissed as improperly joined under Rule 13(g).

2. This order adjudicates the property and possessory rights as between Shaarei Tzion and Ahavat Israel for most of the property taken. It also adjudicates Ahavat Israel's obligation in general for conversion, damages or replevin at Shaarei Tzion or Sentinel's option. Those are the disputes that occasioned Sentinel's declaratory judgment action. Though there are disputed facts as to exactly what personal property was taken and who owns the personal items claimed by Cohen, Sentinel

has a duty to process promptly and in good faith the claim made based on the insured's proof of claim and Sentinel's investigation. It may be that there is no longer anything warranting declaratory judgment, at least at this time, or justification for delay in Sentinel's processing of the claim. The parties should address whether a judgment should be entered on the rulings made in this order and the rest of Sentinel's declaratory judgment action be dismissed as premature at this time or otherwise dismissed in the Court's discretion whether to grant declaratory relief.

**IT IS THEREFORE ORDERED** that Shaarei Tzion's motion for summary judgment (Doc. 51) is granted in favor of Shaarei Tzion on Count I of its cross-claim (Conversion) and on Count III of Ahavat Israel's cross-claim (Conversion).

**IT IS FURTHER ORDERED** that Shaarei Tzion's motion for summary judgment (Doc. 51) is denied as to Count II of Shaarei Tzion's cross-claim (Unjust Enrichment).

**IT IS FURTHER ORDERED** that Shaarei Tzion's Motion to Dismiss (Doc. 55) is granted as to Count IV of Ahavat Israel's cross-claim (Unjust Enrichment).

**IT IS FURTHER ORDERED** that the parties submit by April 14, 2017, a further proposed case scheduling report that also addresses the questions stated Section V of this order.

No judgment is entered at this time.

DATED this 31st day of March, 2017.

_____
Neil V. Wake
United States District Judge